**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | | |
|---|---|---|
| SCOTT PURCEL and PAMELA PURCEL, Individually and as Next Friend of B.P., a Minor, | § § § | |
| Plaintiffs, | § § | CIVIL ACTION NO. 3:07-CV-1777-M |
| v. | § | |
| ADVANCED BIONICS HOLDING CORPORATION and ASTRO SEAL, INC., | § § § § | |
| Defendants. | § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Defendant Astro Seal, Inc.'s Motion to Dismiss [Docket Entry #41].

For the reasons stated below, the Court **DENIES** the Motion.

## FACTUAL BACKGROUND

This case stems from injuries caused by an allegedly defective hearing aid. Plaintiff B.P.,

a minor who was born profoundly deaf in both ears, received surgically implanted hearing aids in

July 2005. Plaintiff asserts that the "HiRes90k" implants B.P. received were negligently

manufactured, as a defective "feed-through" component allowed too much moisture to enter the

device and caused it to malfunction. According to the Complaint, the HiRes90ks were defective

when implanted, and never worked as intended. After approximately a year, the devices were

removed and new devices were implanted in their place.

B.P., along with his parents Scott and Pamela Purcel ("Plaintiffs"), filed an action in the

134th District Court of Dallas County, Texas alleging various causes of action against Defendant

Advanced Bionics Corporation ("Advanced Bionics"), the manufacturer of the HiRes90k.

Advanced Bionics removed the case to this Court on diversity grounds on October 22, 2007.

Plaintiff subsequently joined Astro Seal, Inc. ("Astro Seal"), the company that manufactured the

allegedly defective feed-through component.  Astro Seal now moves to dismiss based on Federal

Rule of Civil Procedure 12(b)(2), on the grounds that the Court lacks personal jurisdiction over

it.

In support of its Motion, Astro Seal submitted the Declaration of Michael Hammer, its

President.  Defendants cite certain factual statements in that Declaration:

- Advanced Bionics approached Astro Seal in California, requesting that Astro Seal provide the feed-through for the HiRes90k.

- The contract between Advanced Bionics and Astro Seal for the fabrication and purchase of the feed-through was executed in California.

- Astro Seal manufactured the feed-through in California.

- Delivery of the feed-through occurred in California.

- Advanced Bionics tested the feed-through in California.

- Astro Seal exercised no control over the feed-through after making delivery to Advanced Bionics, and had no control over where Advanced Bionics sold the HiRes90k.

- Astro Seal had no knowledge about where the finished implants would be sold.

**PERSONAL JURISDICTION**

*A.  Legal Standard*

A federal court sitting in diversity may exercise personal jurisdiction over a nonresident

defendant if the long-arm statute of the forum state confers personal jurisdiction over that

defendant and the exercise of such jurisdiction by the forum state is consistent with due process.[1]

The Texas long arm statute reaches to the limits of due process; therefore this Court need only

determine whether the exercise of personal jurisdiction over the Defendant is consistent with due

process.[2]  The due process clause permits the exercise of personal jurisdiction over a nonresident

defendant when (1) that defendant has purposefully availed itself of the benefits and protections

---

[1] *Latshaw v. Johnston,* 167 F.3d 208, 211 (5th Cir. 1999); *Electrosource, Inc. v. Horizon Battery Technologies, Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing *Schlobohm v. Schapiro,* 784 S.W.2d 355, 357 (Tex. 1990)).
[2] *Guardian Royal Exch. Assur., Ltd. v. English China Clays P.L.C.*, 815 S.W.2d 223, 226 (Tex. 1991).

of the forum state, by establishing "minimum contacts" with the forum state; and (2) the exercise

of jurisdiction over that defendant does not offend "traditional notions of fair play and substantial

justice."[3] The nonresident's contacts must be sufficient for the nonresident to have reasonably

expected to be haled into court in the forum state.[4]

There are two categories of personal jurisdiction, general and specific. General

jurisdiction exists when a defendant's contacts with the forum state are "continuous and

systematic," allowing the court to exercise jurisdiction over that defendant for causes of action

unrelated to the defendant's connections to the state.[5] For specific jurisdiction to exist, the

defendant's contacts must be purposefully directed at the forum and the plaintiff's claim must

arise out of or be related to those contacts.[6]

In situations that involve a manufacturer placing an article into the "stream of

commerce," the Fifth Circuit follows the analysis of the Supreme Court case *World-Wide

Volkswagen Corp. v. Woodson*.[7] Under *World-Wide Volkswagen*, "[t]he forum State does not

exceed its powers under the Due Process Clause if it asserts personal jurisdiction over a

corporation that delivers its products into the stream of commerce with the expectation that they

will be purchased by consumers in the forum State."[8] The Supreme Court distinguished a

situation in which a sale to a particular distributor is an "isolated occurrence," in which case

personal jurisdiction does not exist, from that in which the "[suit] arises from the efforts of the

manufacturer or distributor to serve, directly or indirectly, the market for its product in other

states," in which case personal jurisdiction does exist. The relevant questions are whether the

---

[3] *Panda Brandywine Corp. v. Potomac Elec. Power Co.*, 253 F.3d 865, 867 (5th Cir. 2001).
[4] *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 289 (1980).
[5] *Mink v. AAAA Development LLC,* 190 F.3d 333, 336 (5th Cir. 1999); s*ee also Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414 n.9 (1984).
[6] *See Burger King v. Rudzewicz*, 471 U.S. 462, 472 (1985).
[7] 444 U.S. 286 (1980), *cited by Ruston Gas Turbines, Inc., v. Donaldson Co., Inc.*, 9 F.3d 415, 420 (5th Cir. 1993).
[8] *World-Wide Volkswagen*, 444 U.S. at 297-98.

defendant sought to serve a national market and whether the manufacturer took any steps to limit the scope of the product's distribution.[9]  The manufacturer's "placing of its product into the stream of commerce with the knowledge that the product will be used in the forum state is enough to constitute minimum contacts."[10]

Once the plaintiff has established minimum contacts, the burden shifts to the defendant to demonstrate that the exercise of jurisdiction would be unfair.[11]  To show that an exercise of jurisdiction is unfair once minimum contacts are established, the defendant must make a "compelling case" against it.[12]  The interests to balance in this determination are the burden on the defendant having to litigate in the forum; the forum state's interests in the lawsuit; the plaintiff's interest in convenient and effective relief; the judicial system's interest in efficient resolution of controversies; and the state's shared interest in furthering fundamental social policies.[13]

## ANALYSIS

The parties do not dispute that the Court does not have general jurisdiction over Astro Seal, and thus the Court limits its analysis to whether specific jurisdiction over Astro Seal is present here.

The Court concludes that minimum contacts exist between Texas and Astro Seal, based on Astro Seal's placement of the feed-through component into the national stream of commerce. This case is very similar to *Bean Dredging Corp. v. Dredge Technology Corp.*[14]  In *Bean Dredging*, a Washington manufacturer of steel castings was sued in Louisiana, based on an

---

[9] *Bean Dredging Corp. v. Dredge Technology Corp.*, 744 F.2d 1081, 1085 (5th Cir. 1984).
[10] *Ruston Gas*, 9 F.3d at 419.
[11] *Wien Air Alaska, Inc. v. Brandt*, 195 F.3d 208, 215 (5th Cir. 1999).
[12] *See Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985).
[13] *Wein Air Alaska*, 195 F.3d at 215.
[14] 744 F.2d 1081 (5th Cir. 1984).

alleged defect found in two steel castings manufactured in Washington.  The castings were sold

to another company, which used them to make industrial cylinders in California.  Those

cylinders were later used as part of a dredge constructed in Louisiana.  The casting manufacturer

claimed that Louisiana had no personal jurisdiction over it because the place of suit was two

states (and two sales) removed from the casting manufacturer's original placement of the

castings into the stream of commerce.  The Fifth Circuit held that there were minimum contacts

between the castings manufacturer and Louisiana, despite the fact that: 1) the casting

manufacturer lacked knowledge of where the end product containing the castings would

eventually be sold, 2) the manufacturer did not solicit contracts or other work in Louisiana; and

3) only a fraction of the casting manufacturer's sales occurred in Louisiana.[15]

The Declaration of Astro Seal's President, Michael Hammer, further illustrates the

factual similarities between this case and *Bean Dredging*.  Here, as there, a manufacturer

produced components for another company's finished products.  As in *Bean Dredging*, "the

manufacturer here evidenced no attempt to limit the states in which its [components] would be

sold and used, albeit as a component part of a larger product."[16]  Even though Defendant "did not

originate the distribution system and does not control it, the company did place the [product] in

and move them along a stream of commerce destined for retail sale in finished products

throughout the United States."[17]  The Court in Bean Dredging found the component

manufacturer was entitled to "no solace" because it was a component manufacturer rather than

an end-product manufacturer.[18]

---

[15] *Bean Dredging*, 744 F.2d at 1082-83.
[16] *Id*. at 1085.
[17] *Id*. (internal parentheticals and citations omitted).
[18] *Id*.

Defendant's attempts to distinguish *Bean Dredging* are unavailing. The controlling fact is that the component manufacturer in no way limited broad distribution of the end-product through any restriction in the use of its component. Foreseeability is the issue. As *Bean Dredging* illustrates, absent any limits on distribution, the relevant stream of commerce includes all manufacturers of the complete product and its parts. The fact that Astro Seal only sells a small percentage of its feed-through mechanisms directly to Texas is in no way determinative in the stream of commerce analysis.

Finally, Defendant notes *World-Wide Volkswagen's* statement that "a unilateral decision to take a chattel . . . to a distant State does not suffice to confer jurisdiction."[19] In *World-Wide Volkwagen*, a car dealership sold a car to Plaintiffs in State A, and then Plaintiffs drove the car to State B, where Plaintiffs were injured in an accident, and then sued the dealership in State B. That is a completely different situation from that extant here. The stream of commerce analysis depends largely on the foreseeable scope of the use of the product in question when it is placed in the stream of commerce. As *Bean Dredging* stated, the "the scope of the foreseeable market . . . is generally broader with respect to manufacturers and primary distributors of products who are at the start of a distribution system and who thereby serve, directly or indirectly, and derive economic benefit from a wider market . . . ."[20] In *Word-Wide Volkswagen*, the car dealership was not subject to personal jurisdiction in the state of the accident just because the item sold was used to move from place to place. On the other hand, the car manufacturer entered the national distribution chain, and was therefore subject to personal jurisdiction along all points of that distribution chain. Here, Astro Seal created components which they knew would be incorporated

---

[19] *World-Wide Volkswagen*, 444 U.S. at 314.
[20] *Bean Dredging,* 744 F.2d. at 1084, *quoting Nelson v. Park Industries Inc.*, 717 F.2d 1120, 1125-26 (7th Cir. 1983).

into products distributed nationwide, and is thus subject to personal jurisdiction wherever the end-products incorporating the feed-through were used.

The second question to be determined under the due process analysis is whether it would be "fair" to require Astro Seal to defend this suit in Texas. Astro Seal has not made a compelling case that it would be unfair to do so. Texas clearly has an interest in adjudicating the case, as a Texas plaintiff was injured by the use of the implant. The Plaintiffs' interest in obtaining convenient and effective relief is also furthered by having the suit in Texas, as Plaintiffs will be able to resolve all their claims in one suit, and will likely have better access to sources of proof with Astro Seal present as a party. The judicial system's interest in obtaining the most efficient resolution of the controversy is also furthered by the assertion of personal jurisdiction over Astro Seal, as there will be no need for a separate California lawsuit. Although Astro Seal has apparently elected not to obtain litigation insurance, that factor is not of great significance to the Court. Astro Seal did not satisfactorily prove a compelling burden to itself in travelling to Texas. As *World-Wide Volkswagen* pointed out, "as technological progress has increased the flow of commerce between the States, the need for jurisdiction over nonresidents has undergone a similar increase."[21] The maintenance of this suit does not offend traditional notions of fair play and substantial justice.

---

[21] 444 U.S. at 294.

## CONCLUSION

For the reasons stated above, the Court **DENIES** the Motion to Dismiss.

**SO ORDERED**.

October 27, 2008.

**BARBARA M. G. LYNN**
**UNITED STATES DISTRICT JUDGE**
**NORTHERN DISTRICT OF TEXAS**